IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA COULTER, individually and behalf of all others similarly situated | : : : | CIVIL ACTION |
| | : | No. 17-3970 |
| v. | : : | |
| RECEIVABLES MANAGEMENT SYSTEMS, et al. | : : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                  **February 14, 2019**

Plaintiff Joshua Coulter brings this putative class action against Defendant Io, Inc. t/d/b/a Receivables Management Systems (RMS) (misidentified in the Complaint as "Receivables Management Systems"), alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C §§ 1692-1692p. Coulter's claims stem from a debt collection letter he received from RMS. Coulter alleges the collection letter violated two provisions of the FDCPA—§1692e and § 1692g—because it misleadingly suggested he could dispute the debt RMS was seeking to collect by calling RMS when, in fact, a dispute must be in writing to be effective under the FDCPA. Coulter and RMS have filed cross-motions for summary judgment limited to the issue of RMS's liability to Coulter—i.e., whether the debt collection letter violated the FDCPA. Because the Court agrees with Coulter that the collection letter violated the FDCPA as a matter of law under *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142 (3d Cir. 2013), Coulter's motion will be granted, and RMS's motion will be denied.

**FACTS**[1]

On January 13, 2016, Coulter sought and received medical treatment at a Patient First urgent care center in or near Lancaster, Pennsylvania. Coulter was a 25-year-old university student at the time of the visit and was covered under his father's insurance policy. In June 2016, Coulter received an invoice from Patient First at his parents' address requesting payment of $71.97 for the January visit. Coulter did not pay the invoice, believing his insurance company should have covered the fee. Coulter received additional invoices from Patient First at his parents' address in July and August 2016, which he also did not pay.

On September 7, 2016, Patient First contacted RMS, a company in the business of collecting debts owed to third parties, and requested RMS's assistance in collecting the unpaid debt from Coulter. The following day, RMS mailed a one-page collection letter (the "Collection Letter") to Coulter, stating:

**COLLECTION NOTICE**

> Your **delinquent** account with Patient First has been placed with RMS for immediate attention.
>
> Our records indicate that despite our client's numerous requests for payment you have allowed your account to become seriously PAST DUE. Your payment of this balance, however, will allow us to cease further collection action against you.
>
> If you feel that this balance may be due from your insurance carrier please contact your carrier **prior** to contacting the representative at the extension listed below.
>
> Our Collection Representatives are available to work with you between the hours of 8:30 a.m. and 4:30 p.m. Mail your payment or call today.
>
> Collection Representative: Phil Irvin
>                                  Extension 3141

---

[1] On a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The facts in this case are undisputed.

**Federal Law requires us to inform you that:**

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgement or verification.

Decl. of Ari H. Marcus, Esq. in Supp. of Pl.'s Mot. for Summ. J. (hereinafter, "Marcus Summ. J. Decl.") Ex. A. A P.O. Box address for RMS was printed at the bottom of the Collection Letter, and two telephone numbers for RMS were listed below the P.O. Box address in large boldface type. The foregoing Collection Letter was the first communication Coulter received from RMS.[2]

On September 5, 2017, Coulter filed suit against RMS, alleging the Collection Letter violated 15 U.S.C. §§ 1692e and 1692g because by directing Coulter to call an RMS representative if he believed the debt was due from his insurer, the Letter incorrectly suggested that Coulter could dispute the debt by calling when written notice of a dispute is required. Coulter seeks to pursue this action on behalf of a class consisting of individuals in Chester County, Pennsylvania, to whom RMS sent a debt collection letter containing the statement, "[i]f you feel that this balance may be due from your insurance carrier please contact your carrier **prior** to contacting the representative at the extension listed below." Compl. ¶ 14.

Following a Rule 16 conference on December 11, 2017, the Court entered a scheduling order which directed the parties to conduct fact discovery on the issue of RMS's liability to Coulter under the FDCPA and to file cross-motions for summary judgment on liability at the close of

---

[2] RMS sent two additional letters to Coulter regarding the debt in October and November 2016. Like the letters from Patient First, the three letters from RMS were sent to Coulter's parents' address in Chester County. Because Coulter was in school in Western Pennsylvania when the letters were sent, it is not clear when he first saw them.

discovery. Those motions have been fully briefed, and oral argument was held on October 30, 2018.

**DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

The same standards apply when addressing cross-motions for summary judgment. *See Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). If upon review of cross-motions, the court finds "no genuine dispute over material facts," then judgment may be entered "in favor of the party deserving judgment in light of the law and undisputed facts." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).

"Congress enacted the FDCPA in 1977 . . . to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)). The Act prohibits a range of abusive practices, imposes certain affirmative disclosure obligations on debt collectors, and "provides consumers with a private cause of action against debt collectors who fail to comply

with the Act." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). As a remedial statute, the FDCPA is construed broadly so as to give full effect to its purpose. *See id.*; *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302 (3d Cir. 2014). To prevail on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass*, 765 F.3d at 303. The first three elements are not at issue here.[3] Rather, the parties dispute only whether the Collection Letter sent by RMS violated the FDCPA.

Coulter principally alleges the Collection Letter violated 15 U.S.C. § 1692g,[4] which requires a debt collector seeking to collect a debt to provide the consumer with certain information regarding the debt and the consumer's rights. Specifically, § 1692g requires a debt collector to

---

[3] For purposes of the FDCPA, a "consumer" is "any natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. § 1692a(3); a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes," *id.* § 1692a(5); and a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," *id.* § 1692a(6). RMS does not dispute that in sending the Collection Letter to Coulter, it was trying to collect a "debt" within the meaning of the statute, or that Coulter was a "consumer" with respect to that debt. RMS likewise does not dispute that it is a "debt collector" within the in the meaning of the statute—indeed, RMS's corporate representative conceded that RMS is a "third-party debt collector" solely engaged in the business of third-party debt collection. Marcus Summ. J. Decl. Ex. B, at 12.

[4] Coulter also alleges the Collection letter violated 15 U.S.C. § 1692e(10), which prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt." Coulter's § 1692e(10) claim is based on the same provisions of the Collection Letter as his § 1692g claim, and the Court's analysis of the § 1692g claim is dispositive of both claims, as discussed below. Accordingly, the Court's discussion focusses on the § 1692g claim.

provide a consumer with a written notice, either in its initial communication with the consumer about the alleged debt or within five days after its initial communication, containing:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)-(5). The information in subparagraphs (3)-(5) of § 1692g(a) is referred to as the "validation notice," i.e., "the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353-54 (3d Cir. 2000). These provisions "were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law." *Id.* at 354. If within thirty days of receiving the statutorily required information, a consumer notifies the debt collector that he or she disputes the debt or any portion thereof, the debt collector must "cease all collection efforts . . . until the debt collector mails . . . the debt verification . . . to the consumer." *Id.*; 15 U.S.C. § 1692g(b). Under controlling Third Circuit precedent, a dispute regarding a debt must be communicated in writing to be effective. *See Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991).

Even when a debt collection letter includes the statutorily required validation notice, the letter may nevertheless violate § 1692g if it fails to *effectively* communicate the required notice to the consumer. *Wilson*, 225 F.3d at 354. For example, the validation notice "must be in print sufficiently large to be read, and must be sufficiently prominent to be noticed." *Graziano*, 950 F.2d at 111. And it "must not be overshadowed or contradicted by accompanying messages from the debt collector." *Caprio*, 709 F.3d at 148 (quoting *Graziano*, 950 F.2d at 111); *see also* 15 U.S.C. § 1692g(b) ("Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt . . . ."). "[W]hether language in a collection letter contradicts or overshadows the validation notice is a question of law." *Caprio*, 709 F.3d at 147 (quoting *Wilson,* 225 F.3d at 353 n.2).

In determining whether a validation notice is contradicted or overshadowed, the court "must interpret the [collection letter] from the perspective of [the] 'least sophisticated debtor.'" *Id.* at 151. "[T]he least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor," as the purpose of the standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* at 149 (citations and internal quotation marks omitted). Although the least sophisticated debtor standard "is less demanding than one that inquires whether a particular communication would mislead or deceive a reasonable debtor," *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008), the least sophisticated debtor "is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations," *Caprio*, 709 F.3d at 149. Under this standard, a validation notice will be found to be overshadowed or contradicted by other language in the collection letter if the least sophisticated debtor, upon reading

7

the letter in its entirety, would be "uncertain as to her rights," such as when the letter "can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* (quoting *Wilson*, 225 F.3d at 354).

Coulter does not dispute that the Collection Letter in this case included the statutorily required validation notice in the final paragraph of the Letter, under the heading "Federal Law requires us to inform you that." Rather, Coulter argues the Collection Letter violated § 1692g because the validation notice was overshadowed and contradicted by other language in the Letter. Specifically, Coulter points to the Letter's third and fourth paragraphs, which advise the consumer:

> If you feel that this balance may be due from your insurance carrier, please contact your carrier **prior** to contacting the representative at the extension listed below.
>
> Our Collection Representatives are available to work with you between the hours of 8:30 a.m. and 4:30 p.m. Mail your payment or call today.

Marcus Summ. J. Decl. Ex. A. Coulter argues the least sophisticated debtor could reasonably understand these provisions to suggest that calling RMS was an effective way to raise an insurance-related dispute regarding the debt, even though a dispute must be in writing to be effective under the FDCPA. *See* Pl.'s Mem. in Supp. of Mot. for Summ. J. 7-14. RMS denies that these provisions can reasonably be read as offering the consumer an alternative way to dispute the debt, noting, inter alia, that neither provision makes any reference to "disputing" a debt, a subject that is instead addressed only the in the validation notice at the bottom of the Letter. According to RMS, the provisions cited by Coulter, when read in the order presented in the Collection Letter,

> merely state that, if the debt is valid (*i.e.*, ". . . the balance may be due . . .") but should be paid by [the consumer's] health insurance carrier (*i.e.*, ". . . from your insurance carrier, . . ."), then the debtor should "please contact your carrier prior to contacting the representative at the extension listed below" for purposes of making payment on the debt (*i.e.*, "Mail your payment or call today. Collection Representative: Phil Irvin Extension 3141").

Def.'s Opp'n to Pl.'s Mot. for Summ. J. 5.

In evaluating the parties' positions, the Court's analysis begins with *Caprio v. Healthcare Revenue Recovery Group, LLC*, which Coulter argues is controlling here. Like this case, *Caprio* involved a debt collection letter seeking to collect a medical debt. The body of the letter included the statement, "[i]f we can answer any questions, or if you feel you do not owe this amount, **please call** us toll free at **800-984-9115** or write us at the above address," and directed the debtor to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION." *Caprio*, 709 F.3d at 145. The statutorily required validation notice was printed on the reverse side of the collection letter. *Id.* at 146. Interpreting the collection letter from the perspective of the least sophisticated debtor, the court held the instruction that the consumer should call or write "if you feel you do not owe this amount" overshadowed and contradicted the collection letter's validation notice because the least sophisticated debtor could reasonably understand this statement to instruct the debtor "to call or write in order to dispute the debt itself," when, in fact, "a telephone call is not a legally effective alternative for disputing the debt." *Id.* at 151.

Although acknowledging the letter "did not expressly state that a telephone call would be sufficient to dispute the debt" and that the "'please call' language could be read as nothing more than a mere invitation [to communicate]," the court stressed that the question before it was not "whether the debtor or the debt collector offer[ed] 'a more appropriate reading' of [the] debt collection letter," but how the letter would be understood by the least sophisticated debtor. *Id.* The court went on to hold that the least sophisticated debtor could reasonably understand the phrase "if you feel you do not owe this amount" to encompass a dispute regarding the debt and its validity, and could thus understand the letter to instruct that such disputes could be raised by telephone. *See id.* (noting "the 'least sophisticated debtor' could reasonably 'feel' that he or she 'do[es] not owe this amount' if he or she actually disputed the debt and its validity" (alteration in

9

original)). The court therefore concluded the collection letter "was deceptive because 'it can be reasonably read to have two or more different meanings, one of which is inaccurate,' i.e., that [the debtor] could dispute the debt by making a telephone call." *Id.* at 152 (quoting *Wilson*, 225 F.3d at 354).[5]

Following *Caprio*, a panel of the Third Circuit found a validation notice in a debt collector's initial collection letter was overshadowed and contradicted by a second collection letter, which advised the consumer, "SHOULD THERE BE ANY DISCREPANCY PLEASE CALL TOLL FREE 800-253-2920 OR FOR OUR 24 HOUR AUTOMATED CUSTOMER SERVICE

---

[5] In addition to finding that the substance of the collection letter overshadowed and contradicted the validation notice contained therein, the *Caprio* court found an overshadowing violation based on the form of the letter, which, by selectively using bold and large typeface, emphasized the legally deficient option of contacting the debt collector by telephone over the option of writing, and which relegated the validation notice to the reverse side of letter. *See Caprio*, 709 F.3d at 151-52 (noting the words "please call" and the toll-free telephone number were printed in bold and the telephone number appeared a second time in large font on the front of the collection letter, while the debt collector's mailing address "only appeared in the letterhead where it was actually printed in a smaller font than [the] toll-free telephone number"). The court found the form of the letter caused "even more attention" to be drawn to the "deficient alternative" of disputing the debt by telephone, making it "more likely that the 'least sophisticated debtor' would take the easier—but legally ineffective—alternative of making a toll-free telephone call to dispute the debt instead of going to the trouble of drafting and then mailing a written dispute." *Id.*

Although the court in *Caprio* found that "both the 'substance' as well as the 'form'" of the collection letter at issue overshadowed and contradicted the validation notice, *id.* at 151, a violation of § 1692g may be established based on substance alone, *see Graziano*, 950 F.2d at 111 (finding a collection letter violated § 1692g based solely on the substance of the letter, which threatened legal action if the debt was not paid within ten days, contradicting the validation notice advising the consumer he had thirty days in which to dispute the debt); *Jewsevskyj v. Fin. Recovery Servs., Inc.*, No. 15-3041, 2016 WL 6162728, at *4-5 (E.D. Pa. Oct. 20, 2016) (noting a debt collection letter may violate § 1692g if "the form of the debt collection letter 'overshadows' the validation notice[] *or* . . . [if] the substance of the debt collection letter 'contradicts the validation notice'" (emphasis added)); *Harlan v. Transworld Sys., Inc.*, No. 13-5882, 2014 WL 1414508, at *4 (E.D. Pa. Apr. 14, 2014) (declining to decide whether the formatting of a collection letter violated § 1692g where the substance of the letter "overshadow[ed] its required notice of validation rights"). Coulter does not suggest the form of the Collection Letter in this case overshadowed the validation notice; rather, his FDCPA claims are based entirely on the substance of the Letter.

10

CALL 800-354-4744." *Laniado v. Certified Credit & Collection Bureau*, 705 F. App'x 87, 88 (3d Cir. 2017). The court found the substance of the second collection letter to be "materially indistinguishable from the letter at issue in *Caprio*," as it instructed the consumer to call in the event of a "discrepancy" and the least sophisticated debtor "could reasonably believe there was a discrepancy if he or she 'actually disputed the debt and its validity.'" *Id.* at 90. The court rejected the debt collector's argument that the language at issue was "nothing more than an invitation to communicate, pay, or reach some sort of compromise," holding that even if the letter could be read in the manner advocated by the debt collector, the least sophisticated debtor could understand the language instructing the consumer to "PLEASE CALL" should there be "ANY DISCREPANCY" as "more than a mere continuation of the debt collector's request for payment or for settlement discussions." *Id.* at 90-91.

Although the issue is a close one, this Court agrees with Coulter that, under *Caprio*, the Collection Letter in this case violated § 1692g because the least sophisticated debtor could reasonably understand the Letter to instruct the consumer to raise insurance-related disputes regarding the debt by calling RMS. While RMS's alternative interpretation of the Letter as merely encouraging the consumer to call RMS to make payment on the debt may be plausible, *Caprio* made clear that the Court's task in reviewing the Collection Letter is not "to decide whether the debtor or the debt collector offers 'a more appropriate reading' of [the Letter]," but to "interpret the document from the perspective of [the] 'least sophisticated debtor.'" 709 F.3d at 151. As noted, the third paragraph of the Letter advises the consumer, "[i]f you feel that this balance may be due from your insurance carrier, please contact your carrier **prior** to contacting the representative at the extension listed below." Marcus Summ. J. Decl. Ex. A. As was the case in *Laniado*, the substance of this statement is not materially different from the language at issue in

11

*Caprio*, which instructed the consumer to "**please call**' the debt collector "if you feel you do not owe this amount." *Caprio*, 709 F.3d at 145.

Viewed from the perspective of the least sophisticated debtor, the phrase "[i]f you feel that this balance may be due from your insurance carrier" can reasonably be understood to reference a dispute regarding the debt. This phrase is the equivalent of the phrase "if you feel you do not owe this amount," which the *Caprio* court held could reasonably be interpreted to encompass a dispute—a consumer who feels that a debt is owed by his insurance company would necessarily also feel that he personally does not owe the debt. Indeed, at his deposition, RMS's corporate representative conceded that if a consumer were to advise RMS that the consumer did not believe he owed some or all of the balance alleged to be due because insurance should have covered it, RMS would normally consider the debt to be disputed. Marcus Summ J. Decl. Ex. B, at 20-21.[6]

Moreover, it is undisputed that "the extension listed below" referenced in the Collection Letter is a telephone extension and that the Letter thus instructs the consumer to call RMS after first contacting his insurer if he feels the insurer owes the debt. *See id.* at 22. The message that insurance-related disputes regarding the debt may be raised by telephone is reinforced by the very next paragraph of the Letter, which advises the consumer, "Our Collection Representatives are

---

[6] RMS argues an insurance coverage-related dispute between a consumer and a third-party insurance carrier is not a "dispute" of the underlying debt for purposes of the FDCPA, at least where, as here, the issue is not whether money is owed to a medical provider for services rendered but who, as between the patient and his health insurer, is required to pay for those services. RMS cites no authority in support of this argument. And, contrary to RMS's assertion, courts have recognized that under the FDCPA, a consumer may "dispute" a medical debt on the basis that his insurance company should have paid it. *See, e.g.*, *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 896-97 (7th Cir. 2015) (holding a debt collector was required to cease collection of an unpaid medical bill under § 1692g(b) where the consumer "disputed the debt, saying that his insurance company should have paid"); *Morello v. AR Resources, Inc.*, No. 17-13706, 2018 WL 3928806, at *10 (D.N.J. Aug. 16, 2018) (suggesting a debtor who "seeks to dispute personal liability for a debt by claiming that his or her insurance provider is the liable party" is disputing the debt).

available to work with you between the hours of 8:30 a.m. and 4:30 p.m. Mail your payment or call today."[7] Marcus Summ. J. Decl. Ex. A.

In arguing that the Collection Letter cannot reasonably be read to offer the consumer an alternative method of disputing the debt, RMS relies in part on *Cruz v. Financial Recoveries*, in which a district court within the Third Circuit rejected a similar challenge to a debt collection letter that advised the consumer, "[i]f you have insurance that may pay all or a portion of this debt, that

---

[7] Viewing the fourth paragraph of the Collection Letter in isolation, RMS argues the "call today" language does not violate § 1692g based on *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997), a case cited by the Third Circuit in *Caprio*. In *Terran*, the Ninth Circuit addressed an FDCPA challenge to a debt collection letter that included the required validation notice but also advised the consumer "[u]nless an immediate telephone call is made to J SCOTT, a collection assistant of our office at (602) 258-8433, we may find it necessary to recommend to our client that they proceed with legal action." 109 F.3d at 1430. The consumer argued the letter violated § 1692g because the request that the consumer immediately telephone a collection assistant overshadowed the language in the validation notice stating that the consumer had thirty days in which to dispute the debt. Rejecting this argument, the Ninth Circuit found it significant that the challenged language did not demand immediate *payment* of the debt, which "necessarily [would] require[] the debtor to forego the statutory right to challenge the debt in writing within thirty days, or suffer the consequences," but merely requested an immediate phone call. *Id.* at 1434. The court concluded such language "simply encourages the debtor to communicate with the debt collection agency" and "does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt." *Id.*

In *Caprio*, the Third Circuit distinguished the collection letter at issue in *Terran* from the one before it, noting, inter alia, that the *Caprio* letter "did more than merely ask Caprio to call or write if 'we can answer any questions.' It also asked him to '**please call** us toll free at **800-984-9115** or write us at the above address' if 'you feel you do not owe this amount.'" *Caprio*, 709 F.3d at 152 (record citation omitted). RMS argues the "call today" language in the Collection Letter in this case more closely resembles the language at issue *Terran* than the language at issue in *Caprio*, noting that the provision does not demand payment within the thirty-day period in which the consumer may dispute the debt and makes no reference to disputing the debt. But whether the "call today" provision of the Collection Letter, standing alone, overshadows or contradicts the validation notice is not question here, as Coulter's claim is based on the combined effect of the language in the third and fourth paragraphs of the Letter. Moreover, contrary to RMS's assertion (and as discussed above), here, as in *Caprio*, the challenged provisions of the letter together do more than merely encourage the consumer to communicate with RMS; they ask the consumer to call an RMS representative if the consumer believes the debt is owed by his insurer. *Terran* is therefore inapposite.

13

information can be submitted by calling **1-800-220-0260**." No. 15-0753, 2016 WL 3545322, at *1 (D.N.J. June 28, 2016). The court in *Cruz* recognized that, under *Caprio*, the letter would violate § 1692g if the challenged language suggested to the debtor that if she sought "to dispute the debt because insurance will pay for the debt, she c[ould] do so by making a phone call to the included number." *Id.* at *3. However, the court declined to interpret the letter in this manner, stressing that the language in question "ma[de] no refence to disputing the debt," but merely requested that the consumer provide information regarding the debt, which the court held was permissible under the FDCPA.[8] *Id.* at *3-4; *accord Anela v. AR Resources, Inc.*, No. 17-5624, 2018 WL 2961813, at *1, *4-5 (E.D. Pa. June 12, 2018) (holding a collection letter that advised the consumer, "[i]f you carry any insurance that may cover this obligation, please contact our office at the number above," did not violate § 1692g because the letter made no explicit reference to *disputing* the debt or to the consumer's "beliefs or feelings regarding the validity of the debt," but merely invited the consumer to call with insurance information as a means of *resolving* the debt).

---

[8] The court in *Cruz* also cited *Szczurek v. Professional Management Inc.*, a not precedential opinion in which the Third Circuit considered an FDCPA challenge to a collection letter that advised the consumer, inter alia, "[i]f this debt is for medical services and you have insurance that may pay all or a portion of this debt, that information can be submitted by calling **800[-]220-0260** or by completing the information on the reverse side of this letter and returning the entire letter to this office." 627 F. App'x 57, 59 (3d Cir. 2015). Although the letter in *Szczurek* included language substantially similar to that challenged in *Cruz*, the court in *Szczurek* had no occasion to address that aspect of the letter, as the FDCPA claims concerned a different provision. *See id.* (noting the plaintiff's complaint alleged the debt collector violated §§ 1692e and 1692f "by sending correspondence that created the false impression that the only way to stop [the debt collector] from further contact was to pay the debt"); *id.* at 62 (noting it was undisputed that the debt collector complied with the disclosure requirements of § 1692g(a)). Indeed, the court in *Cruz* acknowledged as much. *See Cruz*, 2016 WL 3545322, at *3 (noting the Court of Appeals in *Szczurek* "took no issue, nor make any mention, of the now-contested language," as "the issue was not before the court in that case").

As an initial matter, the Collection Letter in this case is distinguishable from the letters at issue in *Cruz* and *Anela* because it does more than merely encourage the consumer to provide information about insurance that may cover the debt by phone. By instructing the consumer to call the debt collector if he believes the debt is due from his insurer, the Letter suggests that if the consumer "seek[s] to dispute the debt because insurance will pay for the debt, [he] can do so by making a phone call to the included number." *Cruz*, 2016 WL 3545322, at *3. As the court recognized in *Cruz*, such a message is "inconsistent with the Third Circuit's requirement that debts be disputed in writing," and thus violates § 1692g under *Caprio*. *Id.*

Moreover, while the courts in *Cruz* and *Anela* found that language advising a consumer to call the debt collector if the consumer carries insurance that may cover the debt does not violate § 1692g, other district courts within the Third Circuit have reached the opposite conclusion. In *Morello v. AR Resources, Inc.*, for example, the court found a violation of § 1692g based on language virtually identical to the language at issue in *Anela*. *See* No. 17-13706, 2018 WL 3928806, at *2 (D.N.J. Aug. 16, 2018) ("If you carry any insurance that may cover this obligation, please contact our office at the toll-free number above."). Although acknowledging that there may be a distinction between disputing a debt and resolving it, the court in *Morello* found that the least sophisticated debtor could reasonably interpret the instruction to call if the debtor carried insurance that might cover the obligation "as providing that, in the event the debtor seeks to dispute personal liability for a debt by claiming that his or her insurance provider is the liable party, the debtor may call the debt collector rather than submitting the dispute in writing." *Id.* at *10-11. The court concluded that this language, which "invit[ed] [the] debtor to call the debt collector if another party (i.e., his or her insurance carrier) is liable for all or a portion of the debt obligation, rather than the debtor personally, could mislead that debtor into foregoing his or her statutory right to dispute a

15

debt." *Id.* at *12; *accord Kassin v. AR Res., Inc.*, No. 16-4171, 2018 WL 6567703, at *9-10 (D.N.J. Dec. 13, 2018) (holding the least sophisticated debtor could reasonably interpret a collection letter directing him to call the debt collector if he carried insurance that might cover the debt as providing that, "where the debtor believes his or her insurance carrier was liable for the debt, such a dispute may be submitted by phone, rather than in writing"). The Court finds this analysis persuasive.[9]

Because the least sophisticated debtor could reasonably understand the challenged provisions of the Collection Letter to instruct the consumer that an insurance-related dispute

---

[9] RMS also relies on *Watson v. Certified Credit & Collection Bureau*, in which another district court within the Third Circuit rejected an FDCPA challenge to a collection letter that advised the consumer, "[i]f you believe that these services should have been covered by your insurance company please call your insurance carrier immediately." No. 09-1433, 2009 WL 3068387, at *1-2 (D.N.J. Sept. 23, 2009). Rejecting the plaintiff's argument that the challenged language violated § 1692g, the court opined that "merely advising the debtor of remedying potential errors of debt assessment and notice does not, in and of itself, violate provisions of the FDCPA," noting the language at issue was "sufficient to provide notice of the debt" and "d[id] not appear overly antagonistic or intimidating so as to run afoul of the consumer protection provisions of the FDCPA." *Id.* at *2. Notably, *Watson* was decided before *Caprio*, and the court thus had no occasion to consider the letter under the analysis set forth in that case. In particular, the court does not appear to have considered whether raising an "error of debt assessment" is tantamount to disputing a debt.

The remaining cases cited by RMS are also distinguishable. *Jarzyna v. Home Properties, L.P.*, involved a debt collection letter that advised the consumer that the creditor was "demanding full payment" of the consumer's past due account, then stated, "[o]ur professional debt collectors are here to help you resolve this matter," provided a telephone number, and listed the forms of payment accepted—"[c]heck by phone, Visa, and Mastercard." 114 F. Supp. 3d 243, 256 (E.D. Pa. 2015). Noting the letter gave "no indication . . . that the debtor must call [the debt collector] in order to dispute the debt," the court rejected the argument that letter's references to the debt collector's phone number violated § 1692g "because the telephone number is provided to the debtor as an alternative method by which he could pay off the debt, not as a method by which he should dispute the debt." *Id.* at 261-62. Here, in contrast, the Collection Letter does suggest certain disputes regarding the debt may be raised by telephone, as explained above. In *Rosa v. Encore Receivable Management, Inc.*, the court found no violation of § 1692g where the debt collection letter in question "instruct[ed] the debtor to call to notify the debt collector only if the bill has already been paid and does not appear to be an alternative way to dispute the underlying debt." No. 15-2311, 2016 WL 4472951, at *2 (D.N.J. Aug. 23, 2016). As noted, the Court finds the challenged language in this case provided the consumer with an alternative way to dispute the debt.

16

regarding the debt could be raised by calling RMS, when, in fact, a dispute of a debt must be in writing to be effective, the Court finds these provisions overshadowed and contradicted the validation notice in the Letter in violation of § 1692g. Summary judgment will therefore be granted in favor of Coulter as to liability on his § 1692g claim.

As noted, Coulter also alleges the Collection Letter in this case violated § 1692e(10), which prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Having found that the Collection Letter violated § 1692g by misleadingly suggesting the consumer could raise an insurance-related dispute regarding the debt by telephone, the Court also finds the Letter violated § 1692e(10). *See Caprio*, 709 F.3d at 155 (suggesting the analysis of a § 1692g claim will usually be dispositive of a § 1692e(10) based on the same language or theory); *Graziano*, 950 F.2d at 111 (finding "the juxtaposition of two inconsistent statements" in a debt collection letter violated § 1692e(10) and "also rendered the statutory notice invalid under section 1692g"). Accordingly, summary judgment will also be granted in favor of Coulter as to liability on his § 1692e(10) claim.

For the above stated reasons, Coulter's motion for summary judgment will be granted and RMS's motion for summary judgment will be denied.

An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez   
Juan R. Sánchez, C.J.